Whenever you're ready. Thank you. I'd like to reserve 90 seconds for rebuttal, please. And may it please the court, Ben Kleinman for petitioner Mr. Aguilar. And I'd just like to point out for a moment that with me in the courtroom are some students from the East Bay Community Law Center who work on this case and similar cases. And although Mr. Aguilar has his criminal proceedings and his underlying immigration proceedings both took place in this district in the Ninth Circuit, he is unable to be here because he has been in detention for over a year in Louisiana. But his brother, Mr. Samuel Aguilar, is here on his behalf. There are two issues that we briefed before the court. One is whether the BIA erred in its decision that Mr. Aguilar was not eligible for relief under the Convention Against Torture. And the second is whether or not they erred when they decided that he had committed a particularly serious crime. Can I ask you about the second one first? You submitted a 28-J that says the crime that was originally designated as a felony has now been designated as a misdemeanor. Procedurally, what are we to do with that? My first reaction, I must say, is that you should file a motion to reopen with the BIA because that information wasn't in front of them. What do you think procedurally we should do with this? So, Your Honor, thank you. First of all, I think it's consistent with the arguments we made in the brief. And it essentially corroborates what we said about the errors that the BIA made in not considering all the facts that it was required to consider. We're not looking for a big wind-up here. We simply want to know your reflection on what we should do. Tell you that you must move to reopen or remand? I think that you can order a remand. And you can order the BIA to remand back to the IJA to consider these things. That's my procedural question. And I may not agree with you in the merits. Can we remand to the BIA because we've learned new facts that were not before the BIA? I don't know that we have the procedural ability to do that. Your Honor, I don't know either. This just came down earlier this week. So I have not fully explored this. My understanding, based on some cursory research, is that we could file a new motion before this court to remand based on this new evidence. And so I would suggest, based on that, that you could consider my arguments here, for example, to be a request that you order a remand back to the BIA for them to properly consider whether they need to remand back to the IJA to consider this new evidence. What I do know is that under Ninth Circuit law, this does have the effect of changing the nature of crime. So this has to be considered. And it does change the fact that it was a felony to the fact that it was a misdemeanor. Is there board authority about the consequence of a reduction of a crime from felony to misdemeanor? Now, since you're looking, while you're looking, what I think I'm interested, too, is you can have a particularly serious crime that's a misdemeanor, can you not? I think, in theory, you could. So what we have is we have board authority in the matter of LS, which says that except in exceptional circumstances, that they would never consider a misdemeanor to be a particularly serious crime. Although in that case, the particular misdemeanor was assault with a deadly weapon, which had as its elements an intent to harm and to assault with a deadly weapon. And this is? Here, we'd now be looking at a misdemeanor of false imprisonment, which has no element of force. Well, it does. It does have an element of force. You must use some form of force, whether it's direct or indirect, to restrain someone. Your Honor, even a threat can qualify. But that, or a threat, that might well still be a particularly serious crime. I don't think so under Alphonsus. It doesn't require a crime of violence. It only requires a particularly serious crime. I think under Alphonsus, it would be error to consider de minimis force to elevate a crime. Well, it would be an error to consider de minimis force. But we're not doing an elemental evaluation here. And so if someone uses force to restrain someone, then that could make it a particularly serious crime. And it wouldn't have to be violence, correct? I agree with you, Your Honor. I'm not seeking a categorical rule that a misdemeanor could never be a particularly serious crime. Here's the second question, and why I think we're struggling with the 28J. It's not as if somebody said, oops, we made a mistake. The felony we convicted of you was actually a misdemeanor. There's a California program, or statute, and it's a good one, that says if somebody's convicted of certain felonies after a period of time, the court can, upon petition, reduce their felony to a misdemeanor or on its own. And so does it really change the nature of the crime for purposes of the BIA's analysis? It does, Your Honor, because false imprisonment, PC 236, I believe, is a wobbler. So it can be charged either as a misdemeanor or a felony. And he was convicted as a felon. He pled, yes, and was convicted as a felony. Yes, he was convicted as a felon. Correct. He pled no law, and as I understand it, you or the public defender in his criminal case moved to set aside the plea. Then it looks like both sides in the criminal case agreed to simply reduce it to a misdemeanor. Is that what happened? I don't know exactly how the briefing would. That's what the second page of your 28J letter says. That it was stipulated to reduce. I don't believe it was stipulated. Stipulated or not, he moved, your client moved to withdraw his plea, and then instead accepted the misdemeanor, reduction to misdemeanor. I believe in conversations I had that that is actually inaccurate, and they never did move, and that's an error on the form. Again, this happened very recently. Okay. But that's what's on the form. I agree, Your Honor. That is what's on the form. We've asked you a lot of questions about that. Do you want to talk about Catt? I would like to talk about Catt, thank you. I'd also, before we leave particularly serious crime, I would just like to go back that even ignoring the recent developments, what we have is we have a case where there is no reliable evidence in the record. And so if you look at the BIA's decision, and their reliance on force, and their reliance on time in jail, what we have is we have no reliable evidence, as the immigration judge said, about what actually happened. And we also have a case where at the time that he received his sentence, he was already released from custody. Mr. Aguilar was released from custody a month before this nominal one day jail sentence. Let's talk Catt before you run out of time. Thank you. So when we look at Catt, what we're looking at again is we're looking at whether the BIA considered all the evidence in the record, and whether it didn't. Here, what they blatantly ignored, despite their statement that they considered all the evidence, was expert testimony that Mr. Aguilar withstood a 60 to 70 percent chance of being tortured if he was returned. Who's decision are we reviewing in this case? This is the BIA's decision that we review. Assume for a second we were reviewing the IJ's because the BIA expressly adopted it. I don't think they did in this case, but had they, if we were reviewing the IJ's decision, would there be substantial evidence to support it? There's not. In fact, I would say the record still compels to the contrary. Again, because there's the 60 to 70 percent chance of torture that went unrebutted, unrefuted, and unchallenged. There were challenges to Mr. Hernandez's testimony, but not to this particular opinion that he expressed. There's also a complete mistreatment by the IJ and ignorance by the BIA of the country conditions evidence. And that country conditions evidence, which documents widespread mistreatment and amounting to torture with government intervention, is perfectly consistent with what happened to Mr. Aguilar and what he personally experienced when he was kicked and beaten by police, when but for the conditions he took to remain safe, he would have been threatened, he would have been exposed to more severe treatment and torture by the police. But I take it your argument is not necessarily that there wasn't – there wouldn't be substantial evidence to support an adverse determination, but rather that the BIA didn't review the evidence sufficiently to arrive at that conclusion. For the BIA's level, yes, Your Honor. And if you want to look back to the IJ, I think the IJ's decision merits reversal. I think at the very least it merits remand for consideration of the full record. You're close to your 90-second request. I'd like to reserve at least 30 seconds, if I may, for rebuttal. You may. Thank you, Your Honors. Let's hear from the government. Hello. May it please the Court. My name is Jesse Lorenz, and I represent the Attorney General. I'd first like to address the 28J. This Court cannot consider that under the INA. I think it's 242D1. I'm sorry I don't have the exact site, but I was already on the plane when he filed the 28J. But basically, that prohibits this Court or that prevents this Court from reviewing any extra record. And at this point, this would be extra record. And I'm sure you're right about that, even without the assessment. In other words, we can't say, well, now that we look at this, we say a different result should be reached. Procedurally, what should happen here? Should we say to your colleague, gee, if you want somebody to consider that, file a motion to reopen, or can we remand and say we can't consider it, but you should? Well, procedurally, I think the best course of action for Mr. Aguiar would be to file a motion to reopen. That's really the only ‑‑ I mean, you can't remand, if you can't consider the extra record evidence, you really can't remand for that. I guess procedurally, I think he would have an opportunity to file a motion to reopen before the Board. Now, obviously, there's different things that will come into play there. His motion would be untimely at this point. But I think the remand, if the Court were to remand this case, it would have to be based on the record. I mean ‑‑ So let me ask a different question to sort of focus the procedural issue in your mind. What if his conviction had been reversed on appeal? If it had been reversed on appeal? And he had learned about it after this case was fully ‑‑ in exactly the same procedural posture to us. Could we then say, take it back, look at it? I still think a motion to reopen would be the most appropriate method, because, again, that would still be extra record evidence. That's a little bit different of a situation than what happened here, because we don't have a reversal of appeal. And I know under this Court's precedent ‑‑ Procedurally, it's not any ‑‑ see, that's my ‑‑ I see what you're saying. That's my question. It's just a different fact. I'm still trying to figure out the procedural mechanism. I still think the best procedural mechanism would be a motion to reopen. I just think it's extra record evidence. It happened after the fact. That's something that the Board would have to consider. I think if you're talking about that fact, where the decision had been overturned, his conviction had been overturned, that's a ‑‑ it would be easier for him to reopen before the Board. But it would, I think, still be the same procedural method. I think that's really ‑‑ Is it the government's position that if this, in fact, has happened, reduction from felony to misdemeanor, that that makes a difference or that it doesn't make a difference? I don't think it makes a difference. I mean, if you look at the I.J.'s decision, and in particular at A.R. 92 and 93, for him, the core nucleus of his determination was basically that due to his ‑‑ I mean, first of all, it doesn't change the fact of the plea, as was pointed out before. He did plea guilty or no contest. But it's clear the I.J. thought that preventing a woman from leaving a burning building was a particularly serious crime. Yes. So is it the government's position that we could, this panel could say, notwithstanding the reduction to a misdemeanor, we agree with the I.J. that this was a very serious crime? I agree with that. I mean, the court shouldn't consider the evidence because it's not in the record. But I personally don't think it changes anything because the I.J.'s decision was based on the false imprisonment and the fire. Now, the I.J.'s decision doesn't rely on the force used. His core concern ‑‑ Does that matter? In what regard? Do you have to have force? Well, so for the felony definition, force is required to show force, menace or ‑‑ I'm sorry, force, menace or fraud or deceit, something like that, for felony. The misdemeanor definition excludes force, menace, things of that nature. So for a ‑‑ So a hypothetical question, if someone closes the door when the building's on fire but it's not locked and says the door's not locked but I want you to stay in there, that wouldn't count? I don't know the answer to that question, Your Honor. I'm not ‑‑ Not a criminal expert. I'm not a criminal expert. And when I was preparing for this case, it was all the felony and the force was an element. And he pled guilty or pled no contest to felony false imprisonment by violence. But I guess my question along the same lines is can we be sure that if this conviction had been for misdemeanor false imprisonment that the I.J. would have reached the same conclusion as to the serious? I believe so. And this is, again, pointing you back to the language on 92 and 93, the record 92 and 93, and that's the I.J.'s decision where he talks about, you know, there is some dispute about what actually happened to this building. But his core belief was that he trapped his roommate in a burning building. And that is basically the misdemeanor definition of false imprisonment. And I think that it wouldn't change. Now, the board also, if you look at the ‑‑ I think also it doesn't really change the fact that he did plea no contest to felony false imprisonment. I mean, we're not talking about a categorical match. The government doesn't have to show or it's not a ground of removability. The government wasn't required to show that he could have been sentenced to over a year in prison. And, indeed, we can't review the determination. Right. Whether it's particularly serious. All we can look at is whether the I.J. followed the correct procedural steps in making that determination. Right. And I think here, I think the I.J. did a very thorough job of reviewing that. I mean, the police reports in this context are reliable record evidence. We also have a warrantless arrest warrant that mentions force, that he used force. So I think we're talking about something that was in the record. I don't really think the reduction changes any of that because it's still the reliable record evidence. We're still talking about the same nucleus of facts regardless of the reduction. Why did you mention thorough analysis? Can you tell me whether there's any discussion in the BIA's resolution of this matter of country conditions? Well, the board affirmed ‑‑ I'm looking for a yes or no. Fair enough. Yes, there is. Here's where it is in the record. Or no, there's not. And then you can tell us why it doesn't matter. No, but the board affirmed the immigration judge's decision. And I think the immigration judge did a very thorough job discussing the country conditions. And, you know, the big witness that they had was their expert. And I know ‑‑ Well, they affirmed, but they always affirm. Otherwise, we wouldn't be here. The question is, did they adopt the immigration judge's decision? Well, under this Court's case law, I don't think they expressly adopt. But affirming, there's ‑‑ under this Court's case law, the board is ‑‑ you all are able to look behind the board's decision to some of the IJ's factual determinations. And we cite the Tekel case in our brief. And also, I think it's Molina Estrada. I'm sorry I don't have the exact cites up here. But that is in our brief and our standard of review discussing what this court may do in looking beyond the board's decision to the factual findings of the IJ. Because the board is an appellate body, and they're not required to write, you know, exegesis on every contention that is advanced and review all the record evidence. Not that they don't review all the record evidence, but they're not required to re-summarize it. But here's my concern. The board says we affirm the immigration judge's denial of protection. They don't say we affirm his decision. They don't say we adopt his reasoning. And then they go on, after setting forth the law, which I don't think anybody fights about, to a one-paragraph analysis of the evidence that doesn't include country reports, doesn't include the expert report. So under those circumstances, do we really look through to the IJ's decision? Well, I would argue yes, Your Honor, because of the nature of the IJ's decision. And they are affirming the ultimate outcome. And they always affirm the ultimate outcome. I mean, the rule would have no application if it didn't apply when they affirmed the ultimate outcome. I do understand what you're saying. I mean, I think in some situations the board, the nature of the board's decision is different than the IJ's, especially in the denial of protection. But this one, they're agreeing with the IJ, I believe. And they're just pointing to certain factors that were very important to the board. But I also think this Court can look to the other factors discussed by the immigration judge. Due to the immigration judge, he was the person who heard all the testimony, heard the expert testimony. Yes, Your Honor? Is there any evaluation in the BIA's decision of Aguilar's testimony? Yes or no? No. Again, I don't. Fine. I have my answer. Is there any explanation or examination of the risk of harm to Aguilar? The risk of harm. Yes or no? I don't. I think it's mostly focused on the consent or acquiescence. Is there anything in the BIA decision that deals with whether the risk of harm is speculative or whether the government acquiesced in this form of torture? Yes. The board does discuss the testimony or Mr. Aguilar's fear as speculative. It does decide that. And I think that relates back to what the immigration judge found, in particular with the witness they presented when he testified that there was a 60% or 70% chance of torture. And then when he was cross-examined by the counsel for DHS, he basically said that it was just an estimate and that he didn't really have any facts to base that on. There's also the discussion of the murder rate, which he agreed undermined his testimony. So I think that those are important things to consider in this case, that his own evidence tended to undercut his fear of harm in El Salvador. If there are no more questions, I think we will rest. But I do think that the outcome doesn't change based on the 28J that was filed. And I think both decisions are thoroughly supported. Thank you, Your Honor. Thank you, Mr. Lawrence. I think you've saved 43 seconds. That sounds about right, Your Honor. I'd like to point out that Mr. Hernandez's testimony as to the 60% to 70% likelihood of torture, that wasn't challenged. That wasn't what he categorized as an estimate. There was a dispute about using an estimate of 10% of any population being LGBT, and that was what was considered an estimate. So that testimony was ultimately unchallenged. And I'd also like to point the Court to, just to name the case, it was Garcia-Lopez v. Ashcroft, which is that this Court's precedent regarding changes in the nature of the crime. And with that, Your Honors, I am out of time unless you have questions. My colleagues do not. And we thank you both for your briefs and arguments. And the case will be submitted.
judges: Hawkins, Hurwitz, Eaton